UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:05-CR-00217-FDW-DCK

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| v. | ) |
| | ) **ORDER** |
| RONALD TAMARCUS CLARK, | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court on Defendant's Motions for Compassionate Release/Reduction of Sentence. (Doc. No. 51). Defendant is represented by counsel. The Government opposes the motion, and the parties have fully briefed the issues. (Doc. Nos. 52, 55, 56, 64, 65, 66). For the reasons that follow, the Court DENIES Defendant's motion.

### I. BACKGROUND

In April 2005, Charlotte-Mecklenburg Police officers responded to a complaint that drugs were being sold and conducted a "knock and talk" investigation at Defendant's residence. (Doc. No. 47, p. 3). After receiving consent to search, police searched Defendant's home and found approximately 195 grams of cocaine and a stolen shotgun. Defendant admitted the cocaine, scales, and shotgun were his.

A federal grand jury indicted Defendant and charged him with possession with intent to distribute cocaine in violation of 21 U.S.C. § 841; use and carry of a firearm during and in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1); and possession of a firearm after having been previously convicted of a crime punishable by a term exceeding one year in violation of 18 U.S.C. § 922(g). Defendant entered into a plea agreement with the United States, wherein he pled guilty to the drug trafficking and use of a firearm in furtherance of drug

1

trafficking offenses in exchange for the Government dismissing the felon in possession of a handgun charge. (Doc. Nos. 18, 19).

At the time Defendant committed the instant offenses, he was approximately twenty-six years old and his criminal history included state court convictions for simple assault; assault on a female; felony possession with intent to manufacture, sell, or deliver cocaine; and felony assault on a female. (Doc. No. 47, pp. 7-9).

The Presentence Report ("PSR") attributed 195.04 grams of cocaine to Defendant and calculated his guidelines level as: base level 18. (Doc. No. 47). The PSR also indicated Defendant had at least two qualifying prior convictions to trigger the then-mandatory career-offender enhancement under U.S.S.G. § 4B1.2. (Id., p. 6). With a three-level reduction for acceptance of responsibility, Defendant had a total offense level of 29. Id. That offense level, combined with the then-mandated criminal history category of VI based on his career offender status, resulted in a guidelines range of 262 to 327 months. Id. Without the career offender enhancement, Defendant had a criminal history score of 4, which equated to a criminal history category of III. (Id., p. 10). The Court sentenced Defendant to 202 months for Count 1 and 60 months for Count 2 to run consecutively with Count 1 for an aggregate term of 262 months in prison. (Doc. No. 26).

While in BOP custody. Defendant committed five disciplinary infractions between August 2012 and June 2021, including four instances of using drugs or alcohol and one instance of disruptive conduct. He has completed approximately twenty-nine educational courses or work assignments, including earning his GED, and, in 2023, he received the "Exemplary Service Award" for "maintaining the highest standards, looking after the smallest detail, and going the extra mile as a Recreation Aide for Recreation Services." (Doc. No. 64-1). Defendant now seeks a reduction to "time served," and argues that if he were sentenced today, he would receive a shorter

2

sentence because he would no longer be classified as a career offender and because he suffers from medical conditions that make him more susceptible to severe illness from COVID-19. Defendant is scheduled to be released in October 2025.

## II. STANDARD OF REVIEW

Section 603(b) of The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), amended 18 U.S.C. § 3582(c)(1)(A) to permit a defendant to seek a modification of his sentence from the court for "extraordinary and compelling reasons" if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Before the First Step Act amended § 3582(c)(1)(A), a court could only act to reduce a defendant's sentence for extraordinary and compelling reasons if the BOP filed a motion seeking that relief.

If a defendant has administratively exhausted a claim for release (or the Government does not contest the exhaustion requirement),[1] the district court generally conducts a two-step inquiry when deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A). United States v. Bond, 56 F.4th 381, 383 (4th Cir. 2023). First, the court determines whether the defendant is eligible for a sentence reduction. "A defendant is eligible if the court finds "extraordinary and compelling reasons warrant such a reduction.'" Id. (quoting § 3582(c)(1)(A)(i); citing United States v. Kibble, 992 F.3d 326, 330 (4th Cir. 2021)). "[D]istrict courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise." United States v. McCoy, 981 F.3d 271, 284 (4th Cir. 2020) (internal alterations and citations omitted).

---

[1] United States v. Muhammad, 16 F.4th 126, 130 (4th Cir. 2021) (recognizing the exhaustion requirement in § 3582(c)(1)(A) is not jurisdictional, and it may be waived or forfeited).

"Second, the court considers 'the factors set forth in section 3553(a) to the extent that they are applicable.'" Bond, 56 F.4th at 384 (quoting 18 U.S.C. § 3582(c)(1)(A); citing Kibble, 992 F.3d at 331. Section 3553(a) requires the court to "impose a sentence sufficient, but not greater than necessary" to comply with the basic aims of the statute. In considering whether a reduced sentence is warranted given the applicable § 3553(a) factors, the court considers, among others, "the nature and circumstances of the offense;" "the history and characteristics of the defendant;" the need for the sentence to "provide just punishment," "afford adequate deterrence," "protect the public," and "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;" the kinds of sentences available and sentencing ranges; and "the need to avoid unwarranted sentence disparities." 18 U.S.C. § 3553(a). Notwithstanding the existence of "extraordinary and compelling reasons," the court retains the discretion to deny a defendant's motion after balancing the applicable 18 U.S.C. § 3553(a) factors. United States v. High, 997 F.3d 181, 186 (4th Cir. 2021) ("if a court finds that a defendant has demonstrated extraordinary and compelling reasons, it is still not required to grant the defendant's motion for a sentence reduction.").

Here, the record is clear Defendant exhausted his administrative remedies; thus, the Court's analysis turns to whether Defendant presents extraordinary and compelling reasons supporting his release in light of the applicable § 3553(a) factors.

### III. ANALYSIS

Defendant contends the fact that he would not be a career offender if sentenced today results in an unwarranted sentence disparity that constitutes an extraordinary and compelling reason for compassionate release. Defendant argues the § 3553(a) factors counsel in favor of a reduction to a sentence of time served, particularly given his post-sentencing rehabilitation. The

4

Government disagrees and argues Defendant's lower advisory guideline range if he were sentenced today does not rise to the level of "extraordinary and compelling," and even if it did, the sentencing considerations described in 18 U.S.C. § 3553(a) do not support a sentence of time served.

The Fourth Circuit has recognized that "gross" or "exceptionally dramatic" sentencing disparities between a sentence under the prior law and the current law *can* constitute "extraordinary and compelling reasons," to warrant a reduction in a sentence as imposed. United States v. McCoy, 981 F.3d 271, 274-75, 285, 288 (4th Cir. 2020) ("[T]he *enormous* disparity between [the original] sentence and the sentence a defendant would receive today *can* constitute an 'extraordinary and compelling' reason for relief under § 3582(c)(1)(A). (Emphasis added.)); see also United States v. Reams, No. 1:14-CR-426-1, 2022 WL 2834341, at *4 (M.D.N.C. July 20, 2022) ("A change in sentencing law alone does not compel compassionate release." (citing McCoy, 981 F.3d at 286)), appeal dismissed, No. 22-6957, 2022 WL 18716532 (4th Cir. Nov. 16, 2022). There is no bright line rule or formulaic approach to determine what "disparity" between sentences must exist in order to be considered "extraordinary and compelling," and courts instead look to a defendant's individualized circumstances. See United States v. Johnson, No. 2:08-CR-00930-DCN-7, 2023 WL 24129, at *4 (D.S.C. Jan. 3, 2023) ("[D]istrict courts have determined that an inmate failed to present extraordinary and compelling reasons for compassionate release even though he would have been subjected to a lower advisory guideline range if sentenced today." (citing United States v. Hallman, 2022 WL 4477710, at *3 (W.D.N.C. Sept. 26, 2022) (holding that even though the defendant would no longer be classified as a career offender, the sentencing disparity [between the original 360 months to life and the current range of 161 and 180 months] did not amount to an extraordinary and compelling reason because his criminal history "would likely have warranted

5

an upward variance"); United States v. Massey, 2021 WL 4233886, at *4 (W.D.N.C. Sept. 16, 2021) (explaining that even though Hobbs Act robbery was no longer categorized as a crime of violence, the defendant's sentencing disparity [between the original range of 110 and 137 months and the current range of 70 and 87 months] was not so drastic that compassionate release was warranted); see also United States v. Crumitie, No. 1:06-CR-271, 2022 WL 1809312, at *4 (M.D.N.C. June 2, 2022) (recognizing that although the defendant would not be considered a career offender and a within-guidelines sentence would be "substantially shorter" if the defendant were sentenced today, that is "only one possible hypothetical result" in light of the plea agreement, the potential for the court to not impose a middle-of-the-range sentence, the violent crime committed by the defendant, and his "long criminal history of assaults and robberies").

As a starting point, the change in intervening law and guidelines on which Defendant relies were not made retroactive and therefore have no effect on the *validity* of his career offender designation. Nevertheless, the parties appear to agree that if sentenced today, Defendant would not be classified as a career offender,[2] and his advisory guidelines range would advise a sentence of between 24 and 30 months in prison for the drug-trafficking offense and a consecutive sentence of 60 months in prison for the firearm offense, for an aggregate sentence of at least 84 months in prison.

The individualized circumstances here and the sentencing disparity created by the fact Defendant would not be a career offender if sentenced today constitute extraordinary and compelling reasons to consider a reduction in Defendant's sentence. In so concluding, the Court summarily rejects Defendant's argument that his medical conditions, when coupled with the threat of the COVID-19 virus, constitute extraordinary and compelling reasons to reduce his sentence.

---

[2] The parties agree on this point. United States v. Simmons, 649 F.3d 237 (4th Cir. 2011) (en banc).

The record shows he is considered fully vaccinated against the COVID-19 virus, while nothing in this record suggests his current place of incarceration has failed to take appropriate measures to manage Defendant's medical conditions and nothing suggests the conditions of his current institution—such as uncontrolled spread of the virus or significant outbreaks—create a particularized risk of contracting the disease at his prison facility different than the risk outside the prison.

Having determined that extraordinary and compelling reasons exist based on the sentencing disparity discussed above, the Court concludes after the full record, the applicable § 3553(a) factors, and Defendant's post-sentencing conduct counsel against a sentence of time served.

As an initial matter, the Court notes that during Defendant's original sentencing, his previous counsel requested the Court depart from the Guidelines range, in large part based on Defendant's young age, criminal history, and the significant impact of the career offender enhancement. Counsel suggested that with a departure, the Court should sentence Defendant to seven-and-a-half years, which is relatively close to the Guidelines range Defendant would face if sentenced today without the career offender enhancement. (Doc. No. 25, p. 11). The Court considered counsel's argument and *declined* to grant the departure. In rejecting the argument, the Court noted, "the sentence you're facing is a result of your past. And your past shows a series of serious adult convictions that include violent crimes, and a series of arrests . . . that did not result in convictions but shows over and over and over again that you're having interaction with the law." (Id. p. 17). The Court considered the offense conduct for the serious offenses of distributing cocaine and possessing a firearm —which remains unchanged—as well as Defendant's criminal history, including multiple assault convictions—which also remain unchanged—as part of the basis for the sentence imposed. Although he was in his mid-twenties at the time he was sentenced

7

in this case, his record up to these offenses shows he consistently faced criminal charges and convictions beginning at age 16.

Turning to Defendant's more recent conduct, his disciplinary record while incarcerated tends to show a sentence reduction is not appropriate, particularly where it includes four instances involving illegal substances—one as recent as 2021—and one instance of disruptive conduct. While Defendant's early years of incarceration did not involve any discretionary infractions, Defendant's conduct trends the wrong way and shows an increase in incidents as he nears completion of his sentence, with four of his five infractions occurring within the past five years. (Doc. No. 65). The Court also finds troubling the fact these infractions involve drug use and disruptive behavior, which is reflective of Defendant's prior criminal history involving drug trafficking and assaults. While a defendant's post-sentencing conduct may not be determinative in considering a sentence reduction, it "provides the most up-to-date picture of [his] 'history and characteristics.'" Pepper v. United States, 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)(1)). Unfortunately for this Defendant, his serious recent disciplinary infractions do not suggest he is ready to comply with the law.

With respect to Defendant's efforts at rehabilitation, the Fourth Circuit has held that district courts must provide an individualized explanation for denying relief when the defendant presents evidence of post-sentencing *rehabilitation*. High, 997 F.3d at 189-90 ("[A]s Chavez-Meza makes plain, there are cases in which a minimal explanation suffices, while in other cases, more explanation may be necessary." (citing Chavez-Meza v. United States, 138 S. Ct. 1959 (2018)); cf. United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021) (requiring additional explanation of district court's reasons for rejecting nearly two decades of prison programming and rehabilitative efforts). Here, the Court acknowledges Defendant has completed approximately 29

educations or work courses during the approximate sixteen years he has been imprisoned. The Court specifically commends Defendant for earning his GED and for receiving the exemplary service award this year. These achievements will serve him well when he is released; however, they do not outweigh Defendant's four disciplinary violations since 2018 to sufficiently support a reduction in sentence to time served.

Although Defendant has served more time than the maximum guideline range without the career offender enhancement, that change in the guidelines was not retroactive. Reducing his sentence to time served would not account for his criminal history, the nature and circumstances of the crime, or his disciplinary record while incarcerated. Nor would it reflect the seriousness of his offenses, provide just punishment, or deter similar conduct.

## IV. Conclusion

In addressing changes created by Congress as a result of the First Step Act, the Supreme Court has reiterated the wide discretion afforded to district judges in sentencing and in considering motions for sentence modification. "Put simply, the First Step Act does not *require* a district court to accept a movant's argument that evidence of rehabilitation or other changes in law counsel in favor of a sentence reduction, or the Government's view that evidence of violent behavior in prison counsels against providing relief. . . . All that is required is for a district court to demonstrate that it has considered the arguments before it." Concepcion v. United States, 213 L. Ed. 2d 731, 142 S. Ct. 2389, 2404–05 (2022) (emphasis added). As my colleague in the Middle District of North Carolina so eloquently summarized:

> The compassionate release statute is appropriately invoked only in unusual cases or, as the Fourth Circuit put in in McCoy, the "most grievous cases." 981 F.3d at 286. It should not become a vehicle for wholesale and repeated reconsideration of sentences in violation of the general rule of finality. See [United States v. Goodwyn, 596 F.3d 233, 235 (4th Cir. 2010)].

9

Crumitie, No. 1:06-CR-271, 2022 WL 1809312, at *5; see also Concepcion, 142 S. Ct. at 2406 ("The finality of criminal judgments is essential to the operation of the criminal justice system." (Kavanaugh, J. dissenting)).

Pursuant to a negotiated plea agreement, Defendant pled guilty to the instant offenses involving drug trafficking and a firearm. The Court considered Defendant's arguments at sentencing for a departure—including an argument that the Court sentence Defendant as if he were *not* a career offender—and determined a 262-month sentence to be appropriate. Notwithstanding the significant sentencing disparity between the sentence imposed and the sentence that would be imposed if Defendant was sentenced today, the changes in law were not made retroactive. The record in this case, including Defendant's worsening disciplinary history while incarcerated, as well as the need to reflect the seriousness of the offense, need to provide just punishment, need for adequate deterrence, and need to protect the public outweigh Defendant's positive rehabilitation efforts and counsel against a sentence of time served. Under the current record, the sentence as imposed remains sufficient, but not greater than necessary, to advance the goals of sentencing set forth in § 3553(a).

**IT IS, THEREFORE, ORDERED** that Defendant's Motions for Compassionate Release/Reduction of Sentence, (Doc. No. 51), is DENIED.

**IT IS SO ORDERED.**

Signed: June 22, 2023

Frank D. Whitney
United States District Judge